IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LY HOA KHEM,

        Plaintiff,                    No. CIV S-08-493 KJM

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.              <u>ORDER</u>

        /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

I. Factual and Procedural Background

In a decision dated May 2, 2007, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of asthma, eczema and depression but these impairments do not meet or medically equal a listed impairment; plaintiff can perform light work with no climbing and should avoid concentrated exposure to cold, heat, and wetness and avoid concentrated exposure to fumes, odors, dusts, gasses or poor ventilation, should wear gloves if handling anything on a repeated basis, and is limited to simple, repetitive tasks; plaintiff cannot perform her past relevant work; there are jobs

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

that exist in significant numbers in the national economy that plaintiff can perform; and plaintiff is not disabled. Administrative Transcript ("AT") 20-25. Plaintiff contends the ALJ accorded improper weight to the opinions of her treating mental health professionals and the opinion of an examining psychiatrist, and improperly relied on the testimony of a vocational expert.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III. <u>Analysis</u>

    A. Medical Opinions

Plaintiff contends the ALJ improperly rejected the opinions of treating mental health professionals and examining psychiatrist Dr. Kalman. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. <u>Id</u>. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. <u>Lester</u>, 81 F.3d at 831.

Plaintiff contends the ALJ committed error by failing to accord proper weight to GAFs of 50 assessed by various mental health practitioners. Plaintiff was first seen for mental health services in July 2006. At that time she was assessed with a GAF of 50. AT 173. Her

4

1   GAF was again assessed as 50 in September, November and December 2006.  AT 168, 162, 157.

2   Other than the assessment made in December 2006 by Dr. Kyaw, there is no indication that any

3   of the other GAFs were made by acceptable medical sources.[2]

4        GAF is a scale reflecting the "psychological, social, and occupational functioning

5   on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of

6   Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A GAF of 41-50 indicates serious

7   symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social,

8   work, or school functioning.  Id. The GAF does not correlate to the severity assessments utilized

9   in Social Security disability determinations.[3]  With respect to the GAF of 50 assessed by Dr.

10  Kyaw, impairment in work functioning is only one example of the level of adaptation meriting

11  such a rating.  Moreover, there is no indication in the record that Dr. Kyaw's GAF assessment

12  /////

---

[2] Licensed psychologists are considered "acceptable medical sources," and social worker's reports are considered "other sources" of information. 20 C.F.R. §§ 404.1513(a),(e) & 416.913(a), (e). Similar guidelines apply when weighing conflicting opinions from "acceptable medical sources." See 20 C.F.R. §§ 404.1527, 416.927. Accordingly, the opinions of physicians and licensed psychologists, both "acceptable medical sources," have the same status when assessing weight. No specific guidelines exist for weighing opinions from "other sources." Opinions from "other sources" are thus given less weight than opinions from "acceptable medical sources."

[3] 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) provides in pertinent part:

Comment: Two commenters recommended that we discuss the Global Assessment of Functioning (GAF) Scale in the introductory paragraphs of final 12.00D.  They noted that we referred to the GAF scale in the preamble to the NPRM (56 FR at 33132) and seemed to encourage its use, but then failed to mention it in the proposed rules.
Response: We did not adopt the comment.  We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, but to indicate why the third sentence of the second paragraph of proposed 12.00D stated that an individual's medical source "normally can provide valuable additional functional information." To assess current treatment needs and provide a prognosis, medical sources routinely observe and make judgments about an individual's functional abilities and limitations.  The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings.

5

was based on an inability to work; rather, the record suggests the rating was based on impairment in social functioning.  AT 156-158.

Plaintiff also contends the ALJ improperly rejected the opinion of examining psychiatrist Dr. Kalman.  In this case, no treating physician opined as to plaintiff's mental functional limitations and the record contains no mental assessments by state agency physicians.[4]  Dr. Kalman examined plaintiff in January 2007 and found plaintiff was mildly limited in most work functions and moderately limited in the ability to understand one- or two-step instructions or work involving instructions with three or more steps, and moderately limited in the ability to complete a normal workday.  AT 149-150.  Dr. Kalman specifically noted that a repetitive, simple, entry-level job would not serve as a stressor.  AT 151.  The onset of the limitations assessed by Dr. Kalman was noted as being three years.  AT 152.

The ALJ accorded significant weight to Dr. Kalman's assessment but only to the extent it reflected plaintiff's limitations at the time of the assessment.  AT 23.  The ALJ correctly noted that plaintiff told Dr. Kalman she had recently attempted suicide, yet the psychiatric records reveal no such ideation.  AT 23, 146, 154, 157.  The records also support the ALJ's finding that plaintiff's psychiatric condition was not so severe that it would have prevented work for twelve months.  AT 23, 153-174.  Plaintiff did not seek mental health treatment until July 2006, and although she may have been depressed for some time prior to that, plaintiff herself did not ascribe her mental functioning as a contributing factor to her disability claim even while she was undergoing mental health treatment.  AT 58 (no claim of mental disability in December 2006).  Moreover, Dr. Kalman relied on psychiatric records from 2005 and 2006, which plaintiff's counsel concedes do not exist and which apparently, based on plaintiff's self-reported symptoms, do not even pertain to plaintiff.  AT 148.  In addition, the records repeatedly indicate that plaintiff had no mental impairment sufficient to support a finding of disability.  AT 38, 58,

---

[4] Plaintiff did not claim a mental impairment in the proceedings leading up to the hearing before the ALJ.  AT 37, 38, 39, 58, 67, 79.

67, 79, 100-112, 153-174, 229.  Based on the entirety of the record, the ALJ's conclusion, that Dr. Kalman's assessment did not support a finding that plaintiff met the durational requirement, is supported by substantial evidence.  The court finds the reasons articulated by the ALJ for the weights assigned to the opinions of Drs. Kalman and Kyaw are clear and convincing.  AT 23.  There is no basis for reversal of the ALJ's decision based on the analysis of the mental health record.

      B.  Vocational Expert Testimony

Plaintiff challenges the vocational expert's testimony as conflicting with the Dictionary of Occupational Titles.  The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1); see Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy).

Plaintiff contends the vocational expert's testimony conflicts with the DOT because two of the jobs identified by the vocational expert as being consistent with simple repetitive tasks require a reasoning level of two.  AT 284.  Plaintiff asserts that the ALJ's residual functional capacity finding that plaintiff is limited to simple, repetitive tasks conflicts with the reasoning level required by the identified jobs.  AT 21, 24.  Under the DOT guidelines, a reasoning level of two entails the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT, Scale of General Education Development (GED) Reasoning Development, Level 2.  Because the level two reasoning level

requirement of "detailed" is modified by the qualifier "uninvolved," a limitation to being able to perform only simple tasks is not inconsistent with that level.  See Abrew v. Astrue, 303 Fed. Appx. 567, 569-70 (9th Cir. 2008); see also Lara v. Astrue 305 Fed. Appx. 324 (9th Cir. 2008). Moreover, the vocational expert additionally identified the position of housekeeper, with 16,000 available jobs, which requires only a reasoning level of one.[5]  AT 284-285.  The ALJ did not err in relying on the testimony of the vocational expert.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted.

DATED:  September 30, 2009.

_____
U.S. MAGISTRATE JUDGE

006 khem.ss

---

[5] The DOT provides in pertinent part:

**323.687-014 CLEANER, HOUSEKEEPING (any industry) alternate titles: maid**
Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.). *GOE: 05.12.18 STRENGTH: L GED: R1 M1 L1 SVP: 2 DLU: 86*

8